

| | | | |
|---|---|---|---|
| United States Department of Agriculture | Forest Service | Alaska Region Tongass National Forest Sitka Ranger District | 201 Katlian, Suite 109 Sitka, Alaska 99835 Phone (907) 747-4220 Fax (907) 747-4253 |

**File Code:** 2720-2                                    **Date:** November 15, 1999
**Route To:** *

**Subject:** Partial Refund for BFC - BF 10053100002

**To:** Administrative Officer

Please refund Zonk! Productions $500. Zonk! Productions acquired a Special Use Permit for commercial motion picture filming on the National Forest and paid $600. Due to adverse weather conditions, they were unable to do any filming. Because they had a permit, Zonk! Productions is liable for the $100 minimum permit fee.

Tami Murray, representing Zonk! Productions, requested the refund be sent to:

> Zonk! Productions
> 37256 Hunters Camp Road
> Lisbon, OH 44432

If you have any questions, please contact Mike Johnson at 747-4214.

*M P Remoting  FOR*

JAMES S. FRANZEL
District Ranger

cc:Melissa Dinsmore, SRD

EXHIBIT __3__
page __1__ of __26__



Caring for the Land and Serving People

Printed on Recycled Paper 



| | | | |
|---|---|---|---|
| **United States Department of Agriculture** | **Forest Service** | Alaska Region Tongass National Forest Sitka Ranger District | **201 Katlian, Suite 109 Sitka, Alaska 99835 Phone (907) 747-4220 Fax (907) 747-4253** |

**File Code:** 2720-2

**Date:** November 8, 1999

Re: Copy of Original Billing

Ms. Tami Murray
5800 Divers Cove Way
Las Vegas, NV 89108

Dear Ms. Murray,

Enclosed is the copy of the original Bill For Collection for the special use permit (Permit # SIT18) issued to you, on behalf of Zonk! Productions, Inc. on October 7, 1999. The billing was for a total of $600.00, and was paid on time. Subsequently, you contacted my staff and informed them that you were unable to do the planned filming on Baranof Island due to adverse weather conditions. As a consequence, a substantial refund is due. The minimum permit fee is $100.00. You are liable for this amount because a permit was issued. However, since there was no use of National Forest System lands, the balance of the fees, $500.00, is refundable. Mike Johnson, of my staff, is handling the matter of the refund. He will be in contact with you soon.

In your last phone call to Permit Administrator Barry McDonald, you indicated that it is possibile that you will film on the Tongass National Forest next year. The Sitka Ranger District would be happy to work with you again. The permit would be valid through December 31st of the year issued, and only one permit would be needed. If some of your filming is planned to occur on other Ranger Districts, my staff will work to secure the proper permissions from those Districts. Mike Johnson would assume lead administration on your permit, allowing you to work through just one permit administrator.

If you are going to film on the Tongass next year, and you wish to work with the Sitka Ranger District, I would encourage you to contact my staff as soon as possible. This will ensure that we have you high on our list of permits, and allow us time to research whether a waiver of fees is possible. We are required to work through our National Media Office in determining when this type of activity may qualify for fee waiver, and this will add additional time to the permitting process.

EXHIBIT 3
page 2 of 26





Printed on Recycled Paper



Ms. Tammy Murray

If you have any questions about permit fees, this past season's issued permit, or any questions about obtaining a permit for future activities, please feel free to contact Mike Johnson, or Barry McDonald, at this office.

Sincerely

James S. Franzel
District Ranger

Enclosure

EXHIBIT 3
page 3 of 26



# Zonk! Productions

Phone: 702-658-5863
Fax: 702-658-5964
E-mail: TamiMurray@AOL.com

# *Facsimile*

To:     Barry McDonald
@Fax:  907-747-4253
From:  Tami Murray
Date:   Wednesday, October 13, 1999 @ 11:43 PM
Re:     Permit
Pages:  1, including this

Barry,

I thought this might be easier since we keep missing each other.  First thanks for all you help in getting the permit, as I mentioned in my message we decided to call the shoot because of bad weather, goat hunts are hard enough in good weather!  We are a couple of shows short but we won't be back this year (1999), we might try something in the spring of 2000.  If we are in your area again I promise to give you more time.

Please send the balance of our permit fee to the Ohio office;

Zonk! Productions
37256 Hunters Camp Road
Lisbon, OH 44432
330-424-7467

Thanks again,
Tami

EXHIBIT  3
page  4  of  26

USDA - Forest Service

FS-2700-3 (10/96)
OMB No. 0596-0082

## FOREST SERVICE USE ONLY

| **SPECIAL-USE APPLICATION AND REPORT** (REF.: FSM 2712, 36 CFR 251.54) | Date Received (mm/dd/yyyy) | Region Number | State Code | County Code |
|---|---|---|---|---|
| **INSTRUCTIONS** Applicant should request a meeting with the Forest Service representative responsible for processing the application, prior to completing | Congressional Dist. Number | Forest Code (Admin. Unit No.) | Unit ID Symbol (NFFID No.) | |
| this form. This meeting will allow a discussion of the form's requirements and identify those items to be omitted. | Ranger Dist. No. (Resp. Dist.) | User Number | Kind of Use Code | |

◆ **PART 1—APPLICATION (Applicant Completes)**

| 1. Applicant Name and Address | 2. Authorized Agent Name, Title and Address (include Zip Code) if different from Item 1. | 3. Area Code and Telephone No. |
|---|---|---|
| Zonk! Productions Inc 115 No Caines St Oak Hill, FL 32759 | Tami Murray Executive Producer 5800 Divers Cove Way Las Vegas NV 89108 | a. Applicant's 702-658-5863 b. Authorized Agent's 702-658-5863 |

4. As applicant are you? (Mark one box with "X")
a. [ ] Individual
b. [X] Corporation*
c. [ ] Partnership/Association*
d. [ ] State Government/State Agency
e. [ ] Local Government
f. [ ] Federal Agency
* If marked "X", complete PART II.

5. Specify what application is for: (Mark one box with "X")
a. [X] New authorization*
b. [ ] Renew existing authorization
c. [ ] Amend existing authorization*
d. [ ] Other*

* If marked "X", provide details under Item 7

6. If you are an individual or partnership, are you also a citizen(s) of the United States?
[X] Yes     [ ] No

7. Describe in detail the land use, including: (a) type of use, activity, or facility; (b) related structures and facilities; (c) physical specifications (length, width, acres, etc.); (d) term of years needed; (e) time of year of use or operation; (f) duration and timing of construction; (g) temporary work areas needed for construction; and (h) anticipated need for future expansion. (If extra space is needed, use Page 3, REMARKS).

We are producing a series for ESPN called North to Alaska. The series is an outdoor adventure show featuring hunting + fishing in Alaska. We use a crew of 5 to 6 people 2 cameras, 2 tripods. We will be visiting NE Baranof goat lake, Logan Lake + possibly Hidden Lake the areas noted will be used 10/11 - 10/14 Our guide will be Brian Simpson →

8. Attach map covering area and show location of proposed use and/or furnish legal description of the land.

goat lake, Logan lake + or Hidden Falls Lake

9. Give statement of your technical and financial capability to construct, operate, and terminate the use for which authorization is requested, including the protection and restoration of Federal lands. (If extra space is needed, use page 3, REMARKS).

N/A

10a. Describe other reasonable alternative proposals considered.

Page 1 of 5

EXHIBIT 3
page 5 of 26

**10b.** Give explanation of why it is necessary to utilize Federal lands and why the alternative in item 10a were not selected.    outfitter Northern outdoor Adventures is permited
for area

**11.** Provide statement of need for proposed use, including the economic feasibility and items such as: (a) cost of proposal (construction, operation, and maintenance); (b) estimated cost of next best alternative; and (c) expected public benefits.  (If extra space is needed, use page 3, REMARKS).

**12.** Describe probable effects on the area population, including social and economic aspects, and rural lifestyles.

We will be promoting tourism in Alaska
including. hunting + fishing in the southeast

**13.** Describe likely environmental effects that the proposed use will have on: (a) air quality; (b) visual impact; (c) surface and ground water quality and quantity; (d) control or structural change on any stream or other body of water; (e) existing noise levels; (f) land surface, including vegetation, permafrost, soil and soil stability; and (g) populations of fish, plant, wildlife and marine life, including threatened and endangered species. (If extra space is needed, use page 3, REMARKS).   We are filming an outdoor series this episode
will feature a goat hunt, we will photograph to process
which will include (1) goat's death. Zonk' Productions
will follow all hunting guidelines provided by the
state of Alaska.

**14.** Describe what actions will be taken to protect the environment from the effects of the proposed use.

We will leave the environment as we found it
what we bring in we will take out, food, tents etc.

**15.** Name all Federal, State, County or other department(s)/agency(ies) where an application for this is being filed. Attach appropriate license, building permit, certificate or other document.

N/a

EXHIBIT  3
page  6  of  26

FS-2700-3 (10/96)
OMB No. 0596-0082

I HEREBY CERTIFY, that I am of legal age and authorized to do business in the State and that I have personally examined the information contained in the application and that this information is correct to the best of my knowledge.

| 16a. Applicant's Signature (Sign in Ink) | 16b. Date |
|---|---|
| *Jami Murray* | 9-29-99 |

Title 18, U.S.C. Section 1001, makes it a crime for any person knowingly and willfully to make to any department or agency of the United States any false, fictitious, or fraudulent statements or representations as to any matter within its jurisdiction.

| ◆ PART II—SUPPLEMENTAL INFORMATION (Applicant Completes) | | |
|---|---|---|
| | MARK "X" IN APPROPRIATE BOX BELOW | |
| **I—PRIVATE CORPORATIONS** | ATTACHED | FILED* |
| a. Articles of Incorporation | [X] | [ ] |
| b. Corporation Bylaws | [ ] | [ ] |
| c. A certification from the State showing the corporation is in good standing and is entitled to operate within the State. | [ ] | [ ] |
| d. Copy of resolution authorizing filing. | [X] | [ ] |
| e. The name and address of each shareholder owning 3 percent or more of the shares, together with the number and percentage of any class of voting shares of the entity which such shareholder is authorized to vote and the name and address of each affiliate of the entity together with, in the case of an affiliate controlled by the entity, the number of shares and the percentage of any class of voting stock of that affiliate owned, directly or indirectly, by that entity, and in the case of an affiliate which controls that entity, the number of shares and the percentage of any class of voting stock of that entity owned, directly or indirectly, by the affiliate. | [X] | [ ] |
| f. If application is for an oil or gas pipeline, describe any related right-of-way or temporary use permit applications, and identify previous applications | [ ] | [ ] |
| g. If proposed land use involves other Federal lands identify each agency impacted by proposal. | [ ] | [ ] |
| **II - PUBLIC CORPORATIONS** | | |
| a. Copy of law forming corporation | [ ] | [ ] |
| b. Proof of organization | [ ] | [ ] |
| c. Copy of Bylaws | [ ] | [ ] |
| d. Copy of resolution authorizing filing | [ ] | [ ] |
| e. If application is for an oil or gas pipeline, provide information required by item "I-f" and "I-g" above. | [ ] | [ ] |
| **III—PARTNERSHIP OR OTHER UNINCORPORATED ENTITY** | | |
| a. Articles of association, if any. | [ ] | [ ] |
| b. If one partner is authorized to sign, resolution authorizing action is | [ ] | [ ] |
| c. Name and address of each participant, partner, association or other | [ ] | [ ] |
| d. If application is for an oil or gas pipeline, provide information required by item "I-f" and "I-g" above. | [ ] | [ ] |

* If the required information is already filed with the Forest Service and is current, check box titled "Filed." Provide the file identification information (e.g., number, date, code, name and office at which filed). If not on file or current, attach requested information.

AppSx Works, Release 6.80

EXHIBIT _3_
page _7_ of _26_

USDA - Forest Service

FS-2700-3 (10/96)
OMB No. 0596-0082

Remarks: (This space is provided for more detailed responses to Part I.) Please indicate the item numbers to which these responses apply. Attach sheets, if additional space is needed.

(7) cont.   with Northern Outdoor Adventures Inc. We shoot ENG very low impact. Transportation to location will be by Air Sitka basic outline of show follow our host + guide as they scout, camp + hunt a goat

◆ **PART III—REPORT ON APPLICATION (Forest Officer Completes)**

1. General description of the area and adaptability for the proposed use. Outline area on separate map if needed to clarify proposed use.

2. If previously under authorization indicate:

| a. Name of Holder | b | Date Authorized | c | Date Closed |
|---|---|---|---|---|
| | | | | |

3. Describe any encumbrances on the land, such as withdrawals, power projects, easements, rights-of-way, mining claims, leases, etc. Show on map provided.

4. State approximate amount and kinds of timber to be cut, recommended stumpage prices, method of scaling; include recommendation on disposal of merchantable timber; (a) to holder at current damage appraisal or (b) to others than holder under regular timber sale procedure.

5a. Will proposed use conform to Forest Land and Resource Management Plan? [ ] Yes [ ] No
 b. Has an Environmental Assessment been prepared? [ ] Yes (Attach) [ ] No
 c. Has an Environmental Impact Statement (P.L. 91-190, 42 USC 4321) been prepared? [ ] Yes (Attach) [ ] No

(Note: If "No" is marked with an "X" in any of the above questions, explain in Item 6 below.)

6. Recommendations, including any factors which might effect the granting of the authorization or future use of the land.

FS-2700-3 (10/96)
OMB No. 0596-0082

7. List mandatory and optional clauses which should be made a part of this authorization (See FSM 2780).

8. Fee recommendation (Describe here or on computation sheet attached).

| 9a. RECOMMEND Approval* or Disapproval* | b. Signature (Sign in ink) | c. Title | d. Date |
|---|---|---|---|
| 10a. FINAL Approval * or Disapproval* | b. Signature (Sign in ink) | c. Title | d. Date |

*Delete one by lining it out.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0596-0082.

This information is needed by the Forest Service to evaluate the requests to use National Forest System lands and manage those lands to protect natural resources, administer the use, and ensure public health and safety. This information is required to obtain or retain a benefit. The authority for that requirement is provided by the Organic Act of 1897 and the Federal Land Policy and Management Act of 1976, which authorize the secretary of Agriculture to promulgate rules and regulations for authorizing and managing National Forest System lands. These statutes, along with the Term Permit Act, National Forest Ski Area Permit Act, Granger-Thye Act, Mineral Leasing Act, Alaska Term Permit Act , Act of September 3, 1954, Wilderness Act, National Forest Roads and Trails Act, Act of November 16, 1973, Archeological Resources Protection Act, and Alaska National Interest Lands Conservation Act, authorize the Secretary of Agriculture to issue authorizations or the use and occupancy of National Forest System lands. The Secretary of Agriculture's regulations at 36 CFR Part 251, Subpart B, establish procedures for issuing those authorizations.

The Privacy Act of 1974 (5 U.S.C. 552a) and the Freedom of Information Act (5 U.S.C. 552) govern the confidentiality to be provided for information received by the Forest Service.

Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Department of Agriculture, Clearance Officer, Stop 7602, 1400 Independence Avenue S.W. Washington DC 20250-7602; and to the Office of Management and Budget, Office of Regulatory Affairs , Desk Officer for Forest Service, Washington, D.C. 20503.

*U.S.GPO: 1996-721-568/83565



# State of Florida

## Department of State

I certify from the records of this office that ZONKI PRODUCTIONS, INC. is a corporation organized under the laws of the State of Florida, filed on May 12, 1997.

The document number of this corporation is P97000041833.

I further certify that said corporation has paid all fees and penalties due this office through December 31, 1997, and its status is active.

I further certify that said corporation has not filed Articles of Dissolution.

Given under my hand and the
Great Seal of the State of Florida,
at Tallahassee, the Capitol, this the
Twelfth Day of May, 1997

*Sandra B. Mortham*

Sandra B. Mortham
Secretary of State

EXHIBIT **3**
page **10** of

CR2E022 (2-95)

# ARTICLES OF INCORPORATION

FILED
SECRETARY OF STATE
DIVISION OF CORPORATIONS

97 MAY 12 PM 1: 01

*The undersigned incorporator(s), for the purpose of forming a corporation under the Florida Business Corporation Act, hereby adopt(s) the following Articles of Incorporation.*

## ARTICLE 1   NAME

The name of the corporation shall be:

ZONK! PRODUCTIONS, INC.

## ARTICLE II   PRINCIPAL OFFICE

The principal place of business and mailing address of this corporation shall be:

P.O. BOX 39
OAK HILL, FL  32759

175 NORTH GAINES STREET
OAK HILL, FL  32759

## ARTICLE III   SHARES

The number of shares of stock that this corporation is authorized to have outstanding at any one time is:

100 SHARES

## ARTICLE IV   INITIAL REGISTERED AGENT AND STREET ADDRESS

The name and address of the initial registered agent is:

LARRY R. CSONKA
175 NORTH GAINES STREET
P.O. BOX 39
OAK HILL, FL  32759

EXHIBIT  3
page  11  of  26



# Zonk!
# Productions

---

# *Facsimile*

**To:** Barry McDonald
**@Fax:** 907-747-4253
**From:** Tami Murray
**Date:** Wed Oct 29, 1999 @ 4:29 AM
<u>**Re:**</u>   <u>Film Permit</u>
**Pages:** 13, including this

Barry,

I apologize for the last minute request, we had a schedule change and are hoping we can include a goat hunt from the Southeast in are upcoming schedule. As I mentioned this is a series for ESPN called North to Alaska. We have a limited production budget and with assistance from agencies like yours we are able to produce a quality show that features outdoor adventures in Alaska. Thank you for your consideration and all your extra efforts.

Tami Murray
Executive Producer
Zonk! Productions

EXHIBIT 3
page 12 of 26

FS-2700-4 (9/96)
OMB 0596-0082

| U.S. DEPARTMENT OF AGRICULTURE<br>Forest Service | Holder No.<br>SIT18 | Issue Date<br>10-7-99 | Expir. Date<br>Dec. 31, 1999 |
|---|---|---|---|
| **SPECIAL USE PERMIT** | Type Site(s)<br>551 | Authority<br>239 | Auth. Type<br>22 |
| AUTHORITY:<br>Land and Water Conservation Fund Act<br>of September 3, 1964<br>(U.S.C. 4601) | Region    Forest<br>10/03 | District<br>10 | State    County<br>02/220 |
| | Cong. Dist.<br>00 | Latitude | Longitude |

| Tammy Murray | for | Zonk Productions, Inc. |
|---|---|---|
| (Holder Name) | | (Billing Address - 1)<br>175 No. Gaines St.<br>Oak Hill, FL 32759. |
| ( Billing Address - 2) | | (City, State & Zip Code) |

(hereinafter called the Holder) is hereby authorized to use or occupy National Forest System lands, to use subject to the conditions set out below, on the  Tongass   National Forest,  Sitka Ranger District  unit of the National Forest System.

This permit covers 5 acres within the area shown on the location map attached to and made a part of this permit (included in Attachment 1), and is issued for the purpose of:  Conducting commercial television filming on the National Forest. Activities include overnight camping and hiking in support of a venture which plans on filming a commercially guided Mountain Goat hunt.  Activities occur on the Sitka Ranger District.  An operating plan detailing the amount of authorized use, description of operations, fee calculations, specific locations of use and specific restrictions is included as Attachment 1.

This permit authorizes a maximum of

24  Total Service Days of National Forest Use (Temporary Use)
24  Service Days of sight-seeing and related activities, Sitka Ranger District - SRD

42  12-hour Visitor Days of National Forest use.

The above described or defined area shall be referred to herein as the "permit area".

Actual use figures shall be submitted to the Sitka Ranger District within 30 days of the last day of the permitted trip.

TERMS AND CONDITIONS

I. AUTHORITY AND GENERAL TERMS OF THE PERMIT

A. Authority.  This permit is issued pursuant to the authorities enumerated at Title 36, Code of Federal Regulations, Section 251 Subpart B, as amended. This permit, and the activities or use authorized, shall be subject to the terms and conditions of the Secretary's regulations and any subsequent amendment to them.

B. Authorized Officer.  The authorized officer is the Forest Supervisor or a delegated subordinate officer.

C. License.  This permit is a license for the use of federally owned land and does not grant any permanent, possessory interest in real property, nor shall this permit constitute a contract for purposes of the Contract Disputes Act of 1978 (41 U.S.C. 611). Loss of the privileges granted by this permit by revocation, termination, or suspension is not compensable to the holder.

EXHIBIT  3
page  13  of  26

D. <u>Amendment</u>. This permit may be amended in whole or in part by the Forest Service when, at the discretion of the authorized officer, such action is deemed necessary or desirable to incorporate new terms, conditions, and stipulations as may be required by law, regulation, land management plans, or other management decisions.

E. <u>Existing Rights</u>. This permit is subject to all valid rights and claims of third parties. The United States is not liable to the holder for the exercise of any such right or claim.

F. <u>Nonexclusive Use and Public Access</u>. Unless expressly provided for in additional terms, use of the permit area is not exclusive. The Forest Service reserves the right to use or allow others to use any part of the permit area, including roads, for any purpose, provided, such use does not materially interfere with the holder's authorized use. A final determination of conflicting uses is reserved to the Forest Service.

G. <u>Forest Service Right of Entry and Inspection</u>. The Forest Service has the right of unrestricted access of the permitted area or facility to ensure compliance with laws, regulations, and ordinances and the terms and conditions of this permit.

H. <u>Assignability</u>. This permit is not assignable or transferable. If the holder through death, voluntary sale or transfer, enforcement of contract, foreclosure, or other valid legal proceeding ceases to be the owner of the improvements, this permit shall terminate.

I. <u>Permit Limitations.</u>  Nothing in this permit allows or implies permission to build or maintain any structure or facility, or to conduct any activity unless specifically provided for in this permit. Any use not specifically identified in this permit must be approved by the authorized officer in the form of a new permit or permit amendment.

II. TENURE AND ISSUANCE OF A NEW PERMIT

A. <u>Expiration at the End of the Authorized Period</u>. This permit will expire at midnight on __December 31, 1999__ . Expiration shall occur by operation of law and shall not require notice, any decision document, or any environmental analysis or other documentation.

C. <u>Minimum Use or Occupancy of the Permit Area</u>. Use or occupancy of the permit area shall be exercised at _____N/A_____ days each year, unless otherwise authorized in writing under additional terms of this permit.

D. <u>Notification to Authorized Officer</u>. If the holder desires issuance of a new permit after expiration, the holder shall notify the authorized officer in writing not less than six (6) months prior to the expiration date of this permit.

E. <u>Conditions for Issuance of a New Permit</u>. At the expiration or termination of an existing permit, a new permit may be issued to the holder of the previous permit or to a new holder subject to the following conditions:

    1. The authorized use is compatible with the land use allocation in the Forest Land and Resource Management Plan.
    2. The permit area is being used for the purposes previously authorized.
    3. The permit area is being operated and maintained in accordance with the provisions of the permit.
    4. The holder has shown previous good faith compliance with the terms and conditions of all prior or other existing permits, and has not engaged in any activity or transaction contrary to Federal contracts, permits, laws, or regulation.

F. <u>Discretion of Forest Service.</u> Notwithstanding any provisions of any prior or other permit, the authorized officer may prescribe new terms, conditions, and stipulations when a new permit is issued. The decision whether to issue a new permit to a holder or successor in interest is at the absolute discretion of the Forest Service.

III. RESPONSIBILITIES OF THE HOLDER

A. <u>Compliance with Laws, Regulations, and other Legal Requirements</u>. The holder shall comply with all applicable Federal, State, and local laws, regulations, and standards, including but not limited to, the Federal Water Pollution Control Act, 33 U.S.C. 1251 <u>et seq.</u>, the Resource Conservation and Recovery Act, 42 U.S.C. 6901 <u>et seq.</u>, the Comprehensive Environmental Response, Control, and Liability Act, 42 U.S. C. 9601 <u>et seq.</u>, and other relevant environmental laws, as well as public health and safety laws and other laws relating to the siting, construction, operation, and maintenance of any facility, improvement, or equipment on the property.

B. <u>Plans</u>. Plans for development, layout, construction, reconstruction, or alteration of improvements on the permit area, as well as revisions of such plans, must be prepared by a qualified individual acceptable to the authorized officer and shall be approved in writing prior to commencement of work. The holder may be required to furnish as-built plans, maps, or surveys, or other similar information, upon completion of construction.

EXHIBIT __3__
page __14__ of __21__

C. Maintenance. The holder shall maintain the improvements and permit area to standards of repair, orderliness, neatness, sanitation, and safety acceptable to the authorized officer and consistent with other provisions of this authorization. If requested, the holder shall comply with inspection requirements deemed appropriate by the authorized officer.

D. Hazard Analysis. The holder has a continuing responsibility to identify all hazardous conditions on the permit area which would affect the improvements, resources, or pose a risk of injury to individuals. Any non-emergency actions to abate such hazards shall be performed after consultation with the authorized officer. In emergency situations, the holder shall notify the authorized officer of its actions as soon as possible, but not more than 48 hours, after such actions have been taken.

E. Change of Address. The holder shall immediately notify the authorized officer of a change in address.

F. Change in Ownership. This permit is not assignable and terminates upon change of ownership of the improvements or control of the business entity. The holder shall immediately notify the authorized officer when a change in ownership or control of business entity is pending. Notification by the present holder and potential owner shall be executed using Form FS-2700-3, Special Use Application and Report, or Form FS-2700-3a, Request for Termination of and Application for Special-Use Permit. Upon receipt of the proper documentation, the authorized officer may issue a permit to the party who acquires ownership of, or a controlling interest in, the improvements or business entity.

## IV. LIABILITY

For purposes of this section, "holder" includes the holder's heirs, assigns, agents, employees, and contractors.

A. The holder assumes all risk of loss to the authorized improvements.

B. The holder shall indemnify, defend, and hold the United States harmless for any violations incurred under any such laws and regulations or for judgments, claims, or demands assessed against the United States in connection with the holder's use or occupancy of the property. The holder's indemnification of the United States shall include any loss by personal injury, loss of life or damage to property in connection with the occupancy or use of the property during the term of this permit. Indemnification shall include, but is not limited to, the value of resources damaged or destroyed; the costs of restoration, cleanup, or other mitigation; fire suppression or other types of abatement costs; third party claims and judgments; and all administrative, interest, and other legal costs. This paragraph shall survive the termination or revocation of this authorization, regardless of cause.

C. The holder has an affirmative duty to protect from damage the land, property, and interests of the United States.

D. In the event of any breach of the conditions of this authorization by the holder, the Authorized Officer may, on reasonable notice, cure the breach for the account at the expense of the holder. If the Forest Service at any time pays any sum of money or does any act which will require payment of money, or incurs any expense, including reasonable attorney's fees, in instituting, prosecuting, and/or defending any action or proceeding to enforce the United States rights hereunder, the sum or sums so paid by the United States, with all interests, costs and damages shall, at the election of the Forest Service, be deemed to be additional fees hereunder and shall be due from the holder to the Forest Service on the first day of the month following such election.

E. With respect to roads, the holder shall be proportionally liable for damages to all roads and trails of the United States open to public use caused by the holder's use to the same extent as provided above, except that liability shall not include reasonable and ordinary wear and tear.

F. The Forest Service has no duty to inspect the permit area or to warn of hazards and, if the Forest Service does inspect the permit area, it shall incur no additional duty nor liability for identified or non-identified hazards. This covenant may be enforced by the United States in a court of competent jurisdiction.

## V. TERMINATION, REVOCATION, AND SUSPENSION

A. General. For purposes of this permit, "termination", "revocation", and "suspension" refer to the cessation of uses and privileges under the permit.

"Termination" refers to the cessation of the permit under its own terms without the necessity for any decision or action by the authorized officer. Termination occurs automatically when, by the terms of the permit, a fixed or agreed upon condition, event, or time occurs. For example, the permit terminates at expiration. Terminations are not appealable.

EXHIBIT   3
page 15 of 26

"Revocation" refers to an action by the authorized officer to end the permit because of noncompliance with any of the prescribed terms, or for reasons in the public interest. Revocations are appealable.

"Suspension" refers to a revocation which is temporary and the privileges may be restored upon the occurrence of prescribed actions or conditions. Suspensions are appealable.

B. Revocation or Suspension. The Forest Service may suspend or revoke this permit in whole or part for:

1. Noncompliance with Federal, State, or local laws and regulations.
2. Noncompliance with the terms and conditions of this permit.
3. Reasons in the public interest.
4. Abandonment or other failure of the holder to otherwise exercise the privileges granted.

C. Opportunity to Take Corrective Action. Prior to revocation or suspension for cause pursuant to Section V (B), the authorized officer shall give the holder written notice of the grounds for each action and a reasonable time, not to exceed 90 days, to complete the corrective action prescribed by the authorized officer.

D. Removal of Improvements. Prior to abandonment of the improvements or within a reasonable time following revocation or termination of this authorization, the holder shall prepare, for approval by the authorized officer, an abandonment plan for the permit area. The abandonment plan shall address removal of improvements and restoration of the permit area and prescribed time frames for these actions. If the holder fails to remove the improvements or restore the site within the prescribed time period, they become the property of the United States and may be sold, destroyed or otherwise disposed of without any liability to the United States. However, the holder shall remain liable for all cost associated with their removal, including costs of sale and impoundment, cleanup, and restoration of the site.

VI. FEES

A. Termination for Nonpayment. This permit shall automatically terminate without the necessity of prior notice when land use rental fees are 90 calendar days from the due date in arrears.

B. The holder shall pay an annual fee of  as indicated on the Bill(s) For Collection  for the period from date of permit issuance  to  December 31, 1999 .

C. Payment Due Date. The payment due date shall be the close of business on   the date(s) indicated on the annual Bill(s) For Collection  of each calendar year payment is due. Payments due the United States for this use shall be deposited at   USDA Forest Service, c/o Bank of America, File No. 71652, P.O. Box 60000, San Francisco, California, 94160-1652  in the form of a check, draft, or money order payable to "Forest Service, USDA." Payments shall be credited on the date received by the designated Forest Service collection officer or deposit location. If the due date for the fee or fee calculation statement falls on a non workday, the charges shall not apply until the close of business on the next workday.

D. Late Payment Interest. Pursuant to 31 USC 3717, and regulations at 7 CFR Part 3, Subpart B, and 4 CFR Part 102, an interest charge shall be assessed on any payment or financial statement not received by the due date. Interest shall be assessed using the most current rate prescribed by the United States Department of Treasury's Financial Manual (TFM-6-8020). Interest shall accrue from the date the payment or financial statement was due. In the event that two or more billings are required for delinquent accounts, administrative costs to cover processing and handling of the delinquent debt will be assessed.

E. Additional Penalties. In the event of permit termination pursuant to provisions VI (A), and prior to the issuance of a new permit, a penalty of 6 percent per year shall be assessed on any fee amount overdue in excess of 90 days from the payment due date. This penalty shall accrue from the due date of the first billing or the date the fee calculation financial statement was due. The penalty is in addition to interest and any other charges specified in the above paragraph.

F. Disputed Fees. Disputed fees are due and payable by the due date. No appeal of fees will be considered by the Forest Service without full payment of the disputed amount. Adjustments, if necessary, will be made in accordance with settlement terms or appeal decision.

G. Delinquent Fees.
1. Delinquent fees and other charges shall be subject to all rights and remedies afforded the United States pursuant to Federal law and implementing regulations (31 U.S.C. 3711 et seq.).
2. The authorized officer shall require payment of fees owed the United States under any Forest Service authorization before issuance of a new permit.

EXHIBIT  3
page  14 of 26

VII. OTHER PROVISIONS

A. Members of Congress. No Member of or Delegate to Congress or Resident Commissioner shall benefit from this permit either directly or indirectly, except when the authorized use provides a general benefit to a corporation.

B. Appeals and Remedies. Any discretionary decisions or determinations by the authorized officer are subject to the appeal regulations at 36 CFR 251, Subpart C, or revisions thereto.

C. Superior Clauses. In the event of any conflict between any of the preceding printed clauses or any provision thereof and any of the following clauses or any provision thereof, the preceding printed clauses shall control.

D. Access to Records. For the purpose of administering this authorization (including ascertaining that fees paid were correct and evaluating the propriety of the fee base), the holder agrees to make all of the accounting books and supporting records to the business activities, as well as those of subleases operating within the authority of this authorization, available for analysis by qualified representatives of the Forest Service or other Federal agencies authorized to review the Forest Service activities. Review of accounting books and supporting records will be made at dates convenient to the holder and reviewers. Financial information so obtained will be treated as confidential as provided in regulations issued by the Secretary of Agriculture.

The holder shall retain the above records and keep them available for review for 5 years after the end of the year involved, unless disposition is otherwise approved by the authorized officer in writing. (A-7)

E. Nondiscrimination in Employment and Services.

During the performance of this authorization, the holder agrees:

    1. In connection with the performance of work under this authorization, including construction, maintenance, and operation of the facility, the holder shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin, age, or disability. (Ref. Title VII of the Civil Rights Act of 1964, as amended).

    2. The holder and employees shall not discriminate by segregation or otherwise against any person on the basis of race, color, religion, sex, national origin, age, or disability, by curtailing or refusing to furnish accommodations, facilities, services, or use privileges offered to the public generally. (Ref. Title VI of the Civil Rights Act of 1964, as amended; Section 504 of the Rehabilitation Act of 1973; Title IX of the Education Amendments, and the Age Discrimination Act of 1975).

    3. The holder shall include and require compliance with the above nondiscrimination provisions in any subcontract made with respect to the operations under this authorization.

    4. When furnished by the Forest Service, signs setting forth this policy of nondiscrimination will be conspicuously displayed at the public entrance to the premises, and at other exterior or interior locations as directed by the Forest Service.

    5. The Forest Service shall have the right to enforce the foregoing nondiscrimination provisions by suit for specific performance or by any other available remedy under the laws of the United States of the State in which the breach or violation occurs. (B-1)

F. Insurance Clause. The holder shall have in force public liability insurance covering Three hundred thousand dollars ($300,000) (or five hundred thousand dollars ($500,000) if defense costs are included in the liability limits of the insured) combined single limit (CSL) per occurrence. The coverage shall extend to property damage, bodily injury, or death arising out of the holder's activities under the permit including, but not limited to, the occupancy or use of the land and the construction, maintenance, and operation of the structures, facilities, or equipment authorized by this permit. Such insurance shall also name the United States as "additional-insured" and provide specific coverage of the holder's contractually assumed obligation to indemnify the United States. The holder shall send an authenticated copy of its insurance policy to the Forest Service immediately upon issuance of the policy. The policy shall also contain a specific provision or rider to the effect that the policy will not be cancelled or its provisions changed or deleted before thirty (30) days written notice (10 days for non-payment) to the Forest Supervisor, 204 Siginaka Way, Sitka, AK 99835. (B-10)

G. Operating Plan. The holder shall provide an Operating Plan and revise the plan every _year (prior to permit or amendment issuance)_. The plan shall be prepared in consultation with the authorized officer or designated representative and cover operation and maintenance of facilities, dates or season of operations, and other information required by the authorized officer to manage and evaluate the occupation and/or use of National Forest System lands.

EXHIBIT 3
page 17 of 26

The provisions of the Operating Plan and the annual revisions shall become a part is authorization and shall be submitted by the holder and approved by the authorized officer or their designated representative(s). This Operating Plan is hereby made a part of the authorization. (C-8)

H.  Regulating Services and Rates.  The Forest Service shall have the authority to check and regulate the adequacy and type of services provided the public and to require that such services conform to satisfactory standards. The holder may be required to furnish a schedule of prices for sales and services permitted by the authorization. Such prices and services may be regulated by the Forest Service: Provided, that the holder shall not be required to charge prices lower than those charged by comparable or competing enterprises. (X-22)

I.  Advertising.  The holder, in advertisements, signs, circulars, brochures, letterheads, and like materials, as well as orally, shall not misrepresent in any way, either the accommodations provided, the status of the authorization, or the area covered by it or the vicinity. The fact that the permitted area is located on the Tongass National Forest shall be made apparent in all of the holder's brochures and print advertising regarding use and management of the area and authorized facilities. (X-30)

J.  Archeological-Paleontological Discoveries.  Items of historic, prehistoric, or paleontological value are protected under various Federal laws, including the Antiquities Act of 1906 (16 U.S.C. 433), the Archaeological Resource Protection Act of 1979 (16 U.S.C.. 47033) as amended, and Federal regulations. If historic, prehistoric, or paleontological objects or sites are discovered during activities under this permit, the holder is responsible for assuring that those objects or sites are not disturbed during the course of the activities of the holder or the holder's clients. The holder must notify the Forest Service of such discovery at the earliest opportunity. Failure to comply with this clause may result in criminal prosecution of the holder for violation of a Federal law or regulation. (R10-X17)

K.  Tide Land Clauses.  This permit authorizes only the area and improvements located above the line of mean high tide as shown on the attached map, dated October 4, 1999, which is a part hereof. Authorization for the use of the tidelands seaward from the line of mean high tide must be secured from the State of Alaska, Division of Lands.  (R10-X96)

L.  Designation of Holder Representative.  The holder must designate in writing to the Forest Supervisor the name and title of the person who is authorized to act in all matters connected with the privileges authorized by this permit. In the event the designated representative is to be changed for any reason, the Forest Supervisor must be notified of the replacement as soon as possible. (R10-X97)

M.  State or Native Claims Selection.  Should this permit fall within the boundaries of a present or future State or Native claims selection area, this permit shall terminate two days prior to the selection receiving tentative approval, interim conveyance, or patent to the State of Alaska, a Native, or a Native corporation. (R10-X98)

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0596-0082.

This information is needed by the Forest Service to evaluate requests to use National Forest System lands and manage those lands to protect natural resources, administer the use, and ensure public health and safety. This information is required to obtain or retain a benefit. The authority for that requirement is provided by the Organic Act of 1897 and the Federal Land Policy and Management Act of 1976, which authorize the Secretary of Agriculture to promulgate rules and regulations for authorizing and managing National Forest System lands. These statutes, along with the Term Permit Act, National Forest Ski Area Permit Act, Granger-Thye Act, Mineral Leasing Act, Alaska Term Permit Act, Act of September 3, 1954, Wilderness Act, National Forest Roads and Trails Act, Act of November 16, 1973, Archeological Resources Protection Act, and Alaska National Interest Lands Conservation Act, authorize the Secretary of Agriculture to issue authorizations for the use and occupancy of National Forest System lands. The Secretary of Agriculture's regulations at 36 CFR Part 251, Subpart B, establish procedures for issuing those authorizations.

The Privacy Act of 1974 (5 U.S.C. 552a) and the Freedom of Information Act (5 U.S.C. 552) govern the confidentiality to be provided for information received by the Forest Service.

EXHIBIT  3
page 18 of 26

Public reporting burden for collection of information, if requested, is estimated to average 1 hour per response for annual financial information; average 1 hour per response to prepare or update operation and/or maintenance plan; average 1 hour per response for inspection reports; and an average of 1 hour for each request that may include such things as reports, logs, facility and user information, sublease information, and other similar miscellaneous information requests. This includes the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Department of Agriculture, Clearance Officer, OIRM, AG Box 7630, Washington D.C. 20250; and to the Office of Management and Budget, Paperwork Reduction Project (OMB # 0596-0082), Washington, D.C. 20503.

This permit is accepted subject to the conditions set out above.

**HOLDER NAME: <u>Tammy Murray for Zonk Productions</u>**          **U.S. DEPARTMENT OF AGRICULTURE**
**Forest Service**

By: _____          By: _____
          (Holder Signature)                                        (Authorized Officer Signature)

_____                    <u>District Ranger, (James S. Franzel</u>
          (Holder Signature)                                        (Title)

Date: _____          Date: _____

EXHIBIT ___3___
page _19_ of _26_

Applix Words, Release 4.

OCT 04 '99 10:49AM SITKA RANGER DIST                                    P.8

Public reporting burden for collection of information, if requested, is estimated to average 1 hour per response for annual financial information, average 1 hour per response to prepare or update operation and/or maintenance plan; average 1 hour per response for inspection reports; and an average of 1 hour for each request that may include such things as reports, logs, facility and user information, sublease information, and other similar miscellaneous information requests. This includes the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Department of Agriculture, Clearance Officer, OIRM, AG Box 7630, Washington D.C. 20250; and to the Office of Management and Budget, Paperwork Reduction Project (OMB # 0596-0082), Washington, D.C. 20503.

This permit is accepted subject to the conditions set out above.

HOLDER NAME: Tammy Murray for Zonk Productions        U.S. DEPARTMENT OF AGRICULTURE
                                                       Forest Service

By: _____                          By: _____
          (Holder Signature)                                    (Authorized Officer Signature)

                                                       acting for  District Ranger, (James S. Frenzel
       _____
          (Holder Signature)                                           (Title)

Date: _10-5-99_____                            Date: _10/07/99_____

EXHIBIT  3
page 20 of 50

## AMOUNT OF USE

This permit authorizes a maximum of:

<u>24</u> Total Service Days of National Forest Use (Temporary Use)
24 Service Days of commercial filming, including overnight camping on site, Sitka Ranger
 District (SRD)

<u>42</u> 12-hour Visitor Days of National Forest use.

## DESCRIPTION OF OPERATIONS

This permit is for conducting commercial filming on the Sitka Ranger District, Tongass National Forest. Activities include television filming of a commercially guided Mountain Goat hunt, and associated activities such as overnight camping, and hiking. Access to the National Forest will be by float plane. The commercial guide who will be guiding the hunt will be Brian Simpson of Northern Outdoor Adventures. Mr. Simpson's special use permit is administered by the Juneau Ranger Distirct. All gear will be removed from National Forest System lands at the end of the trip. All camping related refuse will be removed from National Forest System lands at the end of the trip, for proper disposal.

## LOCATION OF OPERATIONS

Filming may take place in the near vicinity of one or more of the following locations on Baranof Island: Goat Lake, Hogan Lake or Hidden Falls Lake. Goat Lake & Hidden Falls lake are in Guide Use Area 04-04. Hogan Lake is in Guide Use Area 04-03.

## 1999 TRIP SCHEDULE  (see fee calculations page)

EXHIBIT 3
page 21 of 26

Attachment 1       Tammy Murray's Operating Plan       Page 2 of 6

Location Map, October 4, 1999



10        0        10       20   Miles

Contour Intervals: 1000'
Water
National Forest System Lands
Non-National Forest
★  Locaton of Lakes, & Vicinity of Filming

EXHIBIT    3
page  22  of  26

## TONGASS N.F. ADMINISTRATIVE UNITS WITH AUTHORIZED AREAS OF USE:

*Sitka Ranger District*

### SPECIAL STIPULATIONS
The first group of stipulations apply to all National Forest System lands covered by this permit. These are followed by lists of stipulations specific to individual Forest Service Administrative Units.

### All Areas Within The Scope Of This Permit
Outfitter-guides will incorporate "Leave No Trace" skills into all activities on National Forest.

Outfitter-guide camps are prohibited within one mile of any Forest Service recreation cabin (except Yakutat Ranger District which has a 1/4 mile limit) unless specifically authorized in this permit.

Outfitter-guided use of public use recreation cabins or their amenities (e.g. skiffs, firewood, fire rings) is prohibited.

Group size limited to 12 people at one time within designated Wilderness areas unless specifically authorized in this permit.

In wilderness areas, all campfires should be built below high tide or on firepans.

Impacts on Bald Eagle Nest Sites: The Forest Service and the U.S. Fish and Wildlife Service have a Memorandum of Understanding which establishes a minimum 330 foot radius habitat management zone around each bald eagle nest tree. Guided groups are prohibited from camping in this zone.

Floating glacial ice in Tracy Arm and Endicott Arm are particularly attractive haulout areas for harbor seals. Care should be taken to avoid harassment in these areas at all times, but is critical during pupping (May and June) and molting (August). Do not attempt approaching the ice floats during these times.


## CHATHAM AREA

Applies to all Chatham Area Districts:

Beach meadows - Permittees will ensure that clients and guides avoid trampling or damaging vegetation in beach meadows. These vegetation zones are generally located at the margin between marine beaches and the forest fringe. Beach meadows are characterized by the presence of plants such as tall grasses, beach pea (*Latyrus maritimus*), Indian paintbrush (*Castilleja unalaschcensis, Castilleja miniata*), Pacific silverweed (*Potentilla anserina*), yarrow (*Achillea borealis*), chocolate lily (*Fritillaria camschatcensis*), northern geranium (*Geranium erianthum*), pretty shooting-star (*Dodecatheon pulchellum*) and Nootka lupine (*lupinus nootkatensis*). When walking through these areas, people should stay on existing paths and game trails. Guides will not establish camps, or allow their clients to camp in these areas.

EXHIBIT **3**
**23** of **26**

**Marine Mammal Restrictions** (these are NMFS recommendations)-Marine mammals are protected under the Marine Mammal Protection Act. All species are protected from "take"; harassment is a form of take. Action, or a lack of action, is prohibited when it is likely to result in an injury, a disruption of behavior of a marine mammal or a significant effect on the normal patterns of marine mammal behavior. This includes, but is not limited to, breeding, feeding, sheltering or migrating patterns.

Humpback whales and Steller sea lions are protected under the Endangered Species Act. Critical Habitats for Steller sea lions include haulouts and rookeries. Designated Critical Habitats include zones that extend 3,000 feet landward, above and seaward. The Critical Habitats in southeast Alaska include:

White Sisters Islands, Cape Cross, Cape Bingham, Sea Lion Island, Kaiuchali Island, Jacob Rock, Biali Island, Eagle Rocks, Cape Ommaney, Benjamin Island, Biorka Island, Cape Addington, Coronation Island, Forrester, Gran Point, Graves Rock, Grindall Island, Hazy, Inian Island, Lull Point, Met Point (Lynn Canal), Pinta Rocks, Round Rock, St. Lazaria Island, Stephens Passage, Sunset Island, Tenakee Cannery Point, Brothers Islands, Sisters Islands, Timbered Island, Turnabout Island, Wolf Rock, Yasha Island.

## Sitka Ranger District

White Sulphur Springs - Outfitter/guided groups will not displace non-guided visitors at White Sulphur Springs bath house.

Mist Cove-Deer Lake Trail - Use of the Mist Cove-Deer Lake trail is prohibited due to unsafe trail conditions and resource damage.

Sitkoh Lake Trail - Approximately the first 1/8 mile of the saltwater end of the trail traverses private land. The Forest Service has a 25' trail corridor easement (12' on either side of the trail) through the private land. The only authorized use in this corridor is foot travel. Use of the private land outside of this corridor (including that portion of Sitkoh Creek) is not authorized by this permit.

Sitkoh Lake - is hike-in, or drive-in only. Permittees may not fly into this area.

Lake Eva and Suloia Lake are hike-in only. Permittees may not fly into these areas.

Basket Bay to Kook Lake - Approximately the first 1/8 mile of the saltwater end of the undeveloped trail traverses private land. Use of private land is not authorized by this permit. If access is via Basket Bay, use of National Forest System land is authorized only if the permittee provides proof that the private landowner has agreed to allow the permittee (and clients) to cross the private holdings.

Little Basket Bay to Basket Lake - The ownership of the uplands immediately adjacent to Little Basket Bay has been recently conveyed, and the lands are now private holdings. While it is anticipated that a public easement, from the bay to the National Forest System lands, will be maintained, the boundary has not yet been surveyed, nor the location of the easement properly identified. Since there would be a high likelihood that unintended trespass could occur, the permittee must provide

EXHIBIT 3
page 24 of 26

proof of permission to utilize the private holdings in order to secure authorization to utilize the
National Forest in the vicinity of Basket Lake.

Deer Lake, Betty Lake, and Jetty Lake - Northern Southeast Regional Aquaculture Association is
under Special Use Permit for activities on Deer Lake and Port Armstrong Keta is under Special Use
Permit for activities on Betty and Jetty Lake.  Additional activities on these lakes should not interfere
with these permitted uses.  Much of the trail from Port Armstrong to Jetty Lake is private ownership,
this permit does not authorize use of the privately owned land.

EXHIBIT  3
Page 25 of 26

**Attachment 1**        **Tammy Murray's (Zonk Productions) 1999 Operating Plan**        **Page 6 of 6**

Estimated Fee & Service Day/Visitor Day Calculations (Pre-season Estimates)

| C1 | C2 | C3 | C4 | C5 | C6 | C7 | C8 | C9 | C10 | C11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Trip # | Trip Dates & Starting/Ending Times | Fee Per Day For 1 - 10 People, Commercial Filming | Total # People Involved in Shoot | Total # of Trip Hours | Total # of Trip Client-Hours (C4xC5) | Total # of Client-Hours of NFS Use | % of Time on NFS Land (C7/C6) | Days of National Forest Use | Total Client Service Days of NFS Use | Main Trip Activity |
| 1 | 10/12-10/15 | $150.00 | 6 | 84 | 504 | 504 | 100% | 4 | 24 | commercial filming |
| | TOTALS: | $150.00 | | | | 504 | | | 24 | |

Service Day/Visitor Day Calculations-

24  Service Days Including:
24  Service Days commercial filming, which includes permission to camp onsite, Sitka Ranger District

42  12-hr. Visitor Days of National Forest use (C7 total /12)

**Fee Calculations-**

Flat Fee Per Day Charge For Commercial Filming:

Fee per day for 1 - 10 people:          $150.00
Number of Days of National Forest Use:   $4.00

**1999 Estimated Fee:**          $600.00

Service Days and 12-hr. Visitor Days are units of measure for tracking use of the National Forest.

EXHIBIT  3
page 26 of 26